

September 11, 2025

VIA ECF
Hon. Andrew L. Carter, Jr.
United States District Court
40 Foley Square
New York, NY 10007

Re:    *J.C., et al.  v. New York City Dep't of Educ., 1*:25-cv-04446 (ALC)

Dear Judge Carter,

Our office represents Plaintiff J.C., appearing individually and on behalf of her child with a disability, K.X., in the above-referenced action. We write to respectfully oppose the request of Defendant New York City Department of Education ("DOE" or the "District") to file a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) as well as clarify several misrepresentations made by Defendant in its letter to the Court dated September 8, 2025.

To start, Defendant has not shown "good cause" to excuse its failure to file a timely response to Plaintiff's Complaint. Defendant's response to Plaintiff's Complaint is egregiously late at this point. Plaintiff filed her Complaint on May 28, 2025, and although Defendant requested an extension of time to respond to the Complaint by letter on June 18, 2025, this request was never granted or endorsed by the Court. The undersigned pointed this out to Defendant's counsel during the parties' meet and confer (which was initiated by the undersigned) on August 7, 2025; Defendant's counsel stated that he was already aware of the fact that his previous request was not granted or ordered by the Court, yet Defendant still did not submit a response to the Complaint or request a further extension from the Court.[1]

Moreover, contrary to Defendant's suggestion in its September 8, 2025 letter, Plaintiff's counsel did not consent to a "30-day extension, to September 8, 2025" for Defendant to respond to the Complaint—rather, during the parties' August 7, 2025 meet and confer, Plaintiff merely indicated that it remained interested in attempting to resolve the matter via settlement and would be open to consenting to a 30-day extension in the event that Defendant was interested in attempting to resolve the matter in good faith. It was not until Plaintiff's counsel followed up with Defendant's counsel several times following the August 7, 2025 meet and confer that, without further discussion concerning potential settlement or notification to Plaintiff that Defendant did not believe settlement was possible, Defendant contacted the Court to request an enlargement of time, *nunc pro tunc*, to file a motion to dismiss the Complaint. Notably, during the August 7, 2025 meet and confer, Defendant's counsel had stated that he had already prepared an Answer to the Complaint (and, relatedly, did not indicate any intention to file a motion to dismiss). Rather than a mere oversight, Defendant's failure to respond to the Complaint for over three months appears to be a willful disregard for the Rules of Civil Procedure.

---

[1] Even if the Court granted Defendant's initial request for an extension, Defendant still would have been out of compliance as of August 7, 2025 as Defendant initially had sought an extension to respond to August 4, 2025. Dkt. 6.

With respect to Defendant's proposed motion to dismiss, Defendant failed to put forth appropriate grounds for such a motion in its September 8, 2025 letter to the Court. By way of background, Plaintiff's claims in this matter arise out of two separate administrative hearings brought by Plaintiff under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"). Dkt. 1 at ¶6. Following the first administrative hearing at issue, on September 22, 2022, an impartial hearing officer ("IHO") issued a Findings of Fact and Decision ("FOFD") in which she found that the DOE denied K.X. a free appropriate public education ("FAPE") for the 2020-2021 school year and awarded Plaintiff's requested relief in full. *Id*. at ¶12. Following a second administrative hearing involving subsequent school years, on January 31, 2024, an IHO issued an FOFD in which he found that the DOE denied K.X. a FAPE for the 2021-2022, 2022-2023, and 2023-2024 school years, but the IHO denied the final relief requested by Plaintiff. *Id*. at ¶19. Plaintiff then appealed that decision to the Office of State Review ("SRO"). *Id*. at ¶20. The SRO sustained Plaintiff's appeal in part and ordered the DOE to, *inter alia*, (i) convene, within 14 days of the date of the decision, the Committee on Special Education and develop n IEP for K.X. that includes one individual 30-minute feeding therapy session per week, and five 30-minute speech-language therapy sessions per week; (ii) specify that the educational placement in the student's IEP shall be in a special class that provides primarily ABA programming at a public school or, if unavailable, a State-approved nonpublic school; (iii) within 45 days of the date of the SRO decision, locate and place K.X. in such a program pursuant to the student's IEP, which shall continue for the remainder of the 2023-2024 school year and the duration of the 12-month 2024-2025 school year unless the parties otherwise agree to an alternative placement; (iv) fund and provide a bank of compensatory services for K.X. in the form of compensatory ABA services calculated on the basis of five hours per week of 1:1 ABA services provided over a 12-month school year, or 42 weeks, for the denial of FAPE for each of the 2021-2022, 2022-2023, and 2023-2024 school years for a total of 630 hours; (v) fund and provide a bank of compensatory services for K.X. in the form of compensatory speech-language therapy calculated on the basis of two individual 30-minute sessions of speech-language therapy over a 12-month school year, or 42 weeks, for the denial of FAPE for each of the 2021-2022, 2022-2023, and 2023-2024 school years for a total of 126 hours; and (vi) fund and provide a bank of compensatory services for K.X. in the form of compensatory feeding therapy calculated on the basis of one 30-minute session per week from December 13, 2023 through the date that the new IEP required in the decision is put into place. *Id*. at ¶22.

On May 28, 2025 Plaintiff filed the Complaint in this matter requesting that the Court (1) provide relief associated with the DOE's failure to implement various aspects of the SRO's May 2, 2024 decision; and (2) award legal fees, costs, and expenses incurred in the underlying administrative matters as well as this action. *Id*. at ¶24. Plaintiff's Complaint alleges, *inter alia*, that Defendant failed to implement various aspects of the SRO decision such as (i) Defendant failed to locate and place K.X. in a special class that provides primarily ABA programming at a public school or a State-approved nonpublic school; and (ii) Defendant failed to provide K.X. with any compensatory ABA services, feeding therapy, or speech-language therapy to date. *Id*.

Over three months after the filing of the Complaint, Defendant now seeks to file a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. 8. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1) as articulated in Defendant's September 8, 2025 letter, however, would do little to resolve the parties' dispute and result in a waste of resources for both the parties and the Court. To begin, although Defendant's September 8, 2025 letter suggests that its motion would seek to dismiss Plaintiff's claims in full, Defendant cites no grounds for dismissal of

Plaintiff's claim for legal fees, costs, and expenses in the underlying administrative matters or in this action. Indeed, Defendant appears to acknowledge that Plaintiff prevailed at the administrative hearings, and thus Plaintiff would be entitled to reasonable legal fees, costs, and expenses as a result. Defendant also does not address Plaintiff's claim that Defendant failed to implement the portion of the SRO's decision that required Defendant to locate and place K.X. in a special class that provides primarily ABA programming at a public school or a State-approved nonpublic school.

With respect to Plaintiff's remaining implementation claims, Defendant appears to argue that dismissal is appropriate because it has purportedly complied with the portions of the SRO decision that order compensatory services. Defendant's compliance with the terms of the SRO decision, however, is a factual issue that is inappropriate to decide at the pleadings stage. Assuming *arguendo* that Defendant's interpretation of the SRO's language concerning the award of compensatory services is correct (which it is not),[2] Defendant's own letter acknowledges that it would need to establish that it complied with the SRO's order through the use of declarations and communications that are outside of the pleadings. Defendant's letter similarly refers to documents outside of the pleadings in arguing the meaning that the SRO's order was "clear" and "unambiguous"—again, documents that could not be considered in a Rule 12(b)(1) or 12(b)(6) motion. Similarly, Defendant's mootness defense would require reference to documents outside of the pleadings, including proof that Defendant has provided all of the compensatory relief ordered by the SRO (which it has not). In short, a Rule 12(b)(6) or 12(b)(1) motion to dismiss is inappropriate and inefficient in a proceeding such as this and would merely serve to delay a complete resolution of the case, waste the Court's resources, and increase legal fees.

It has been and remains Plaintiff's hope that this matter can be resolved amicably through settlement. For this reason, and to avoid burdening the Court with unnecessary motion practice, Plaintiff has refrained from filing a Motion for Default Judgment based on Defendant's egregious (and willful) failure to respond to the Complaint. Relatedly, rather than rush into motion practice, Plaintiff respectfully requests that the Court refer the matter to the Magistrate and/or a mediator to facilitate settlement discussions (which, even if unsuccessful, would hopefully narrow the scope of what may ultimately have to be briefed).

Thank you for Your Honor's consideration.

Respectfully,
/s/ *Steven J. Alizio*
Steven J. Alizio, Esq.
Justin B. Shane, Esq.
The Law Office of Steven Alizio, PLLC
Counsel for Plaintiff

cc:    Alfred Miller, Jr., Esq. (via ECF)

---

[2] Defendant's suggestion that the SRO decision "clearly and unambiguously" put the burden on Plaintiff herself to locate compensatory service providers (*see* Dkt. 8 at 2) is unpersuasive. In the "Conclusion" section of the SRO's decision, the SRO explicitly states that "**the district must provide** compensatory ABA services, feeding therapy, and speech-language therapy to remedy the denial of FAPE." Dkt. 8-1 at 20 (emphasis added). Relatedly, no portion of the SRO's decision orders Plaintiff to do *anything*. Indeed, every order issued in the SRO's decision is clearly directed at the DOE (*id*. at 20–21)—the DOE deprived K.X. of a FAPE and thus *it* was ordered to fund **and provide** services to compensate K.X. for such deprivation. Thus, it is Defendant who is aiming to add language to the SRO's decision (while simultaneously seeking to both remove and ignore language from the decision that it does not like).